# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT C. WOMACK, | Case No. 09cv2679 BTM(NLS) |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| METROPOLITAN TRANSIT SYSTEM, et al., | |
| Defendants. | |

Defendants Metropolitan Transit System ("MTS") and San Diego Trolley, Inc. ("SDTI"), have filed a motion for summary judgment, or in the alternative, partial summary judgment. For the reasons discussed below, Defendants' motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

In September 2005, SDTI hired Plaintiff, Robert C. Womack,  as a Code Compliance Inspector ("CCI").  (Womack Dep. (Def.'s Ex. 1) 34:3-10.)  As a CCI, Womack's job duties included enforcing the ordinances of SDTI, issuing citations, making arrests, preparing incident and arrest reports, and testifying in court regarding arrests and violations.  (Womack Dep. 34:11-35:18; Burke Decl. ¶ 2.)  CCIs are not police officers, do not carry weapons, and are not in any way affiliated with the police department.  (Burke Decl. ¶ 2.)

During Womack's training, Womack received a copy of the SDTI Rules and

1  Instructions for employees and agreed to comply with the rules.  (Womack Dep. 37:5-8.)

2  Womack understood that failure to comply with the rules could result in discipline, up to and

3  including discharge.  (Womack Dep. 37:10-13.)  SDTI's Standard Operating Procedures

4  include the following provisions:  Section 1.4.7 (prohibits employees from falsifying any

5  statement or record); SOP 600.1(1) (provides that employees shall not violate any laws,

6  whether on or off SDTI premises, which may have an adverse impact on the reputation or

7  operations of SDTI); SOP 600.1(4) (prohibits unbecoming conduct, both on and off duty,

8  which brings SDTI into disrepute or tends to impair the operation and efficiency of SDTI);

9  and SOP 600.1(41) (requires truthfulness when asked questions by any SDTI supervisor or

10  manager).  (Def.'s Ex. 9.)

11

12  A.  Canine-Handler Interview

13       On May 2, 2007, Womack interviewed for an SDTI canine-handler position, which

14  involved handling and housing "bomb-sniffing" dogs.  (Womack Dep. 49:5-7; Parham Decl.

15  ¶ 2.)  The interview was with William Burke (Director of Transit Security), Lawrence Savoy

16  (Assistant Director of Transit Security), and Sgt. Len Parham (Canine and Code Compliance

17  Supervisor), and a TSA representative.  (Womack Dep. 44:1-12.)  During the interview,

18  Womack was asked to describe the type of residence in which he resided to determine if he

19  could accommodate the dogs.  (Womack Dep. 49:8-15.)  Womack responded that he had

20  a three-bedroom house in the Santee area with a fenced-in yard.  (Womack Dep. 49:16-18.)

21       After the interview, Parham followed up with Womack to arrange a visit to Womack's

22  house.  (Parham Decl. ¶ 3.)  Initially, Womack told Parham that he could come by his house.

23  (Id.)  A short time later, Womack called Parham and told him that he did not actually live in

24  the house he previously described but had planned to rent the house.  (Id.)  Womack also

25  told Parham that the agreement to rent the house had fallen through.  (Id.)  Womack was

26  actually living in an apartment.  (Id.)  Parham informed Burke and Savoy that Womack had

27  lied during the interview.  (Id.)

28       On May 4, 2007, Burke and Savoy met with Womack.  (Burke Decl. ¶ 6.)  Womack

1    claimed that he mis-spoke during the interview because he was nervous.  (Id.)  Womack

2    explained that although he did not live in a house, he was in the process of trying to rent a

3    house, and had even given the landlord a deposit check.  (Id.)  The agreement, however,

4    had fallen through.  (Id.)  Burke offered Womack a chance to show him a copy of his deposit

5    check or a rental agreement to prove that he was not lying.  (Burke Decl. ¶ 7.)  Womack

6    refused to do so and withdrew his name from consideration.  (Id.)  According to Womack,

7    he refused to produce evidence of the rental agreement because his financial information

8    is private and does not concern anyone else.  (Womack Dep. 61:5-9.)

9          Womack was issued a two-day unpaid suspension for his dishonesty in the canine

10   interview.  (Burke Decl. ¶ 8.)  Womack did not grieve the suspension and signed his

11   discipline letter.  (Burke Decl. ¶ 8; Def.'s Ex. 16.)

12

13   B.  Avalon Incident

14         Avalon Home Care ("Avalon") is a local business that provides home care services

15   for elderly or disabled individuals.  (Brown Decl. ¶1; Baratti Decl. ¶ 1.)  Marcus Brown and

16   Junie Baratti own Avalon.  (Id.)

17         On or about April 23, 2007, Womack left a message on Brown's cell phone.  Womack

18   claimed to be the son-in-law of an Avalon client, Mary LaDuc, and alleged that Ms. LaDuc's

19   caretaker had stolen some of her cash.  The recorded message stated:

20          Hello, my name is Robert Womack.  I'm the son-in-law of Mary LaDuc and we
             need to talk to you about what happened here.  We're finding some more
21          problems here at Mary's house and I was – my understanding is she – you're
             going to come over here today to return some money that was stolen from
22          Mary.  I want to tell you I'm also with the law enforcement.  I'm a police officer
             and I'm going to be conducting an investigation with my department.  I think
23          the best thing for you to do as soon as you can is get ahold of me or Dodie as
             soon as possible.  I'm going to try and page you and then I will return your
24          phone call to you.

25   (Womack Dep. 126:13-127:9; Brown Decl. ¶ 3.)

26         Brown and Baratti returned Womack's call that same day.  (Brown Decl. ¶ 4; Baratti

27   Decl. ¶ 3.)  Womack accused an Avalon caregiver of stealing his mother-in-law's petty cash,

28   and stated that based on his experience in criminal matters, it appeared that the caregiver

3

was guilty of theft.  (Id.)  Womack said that he would be dusting for fingerprints and warned Brown and Baratti that they could be charged criminally in connection with the matter.  (Id.) Womack also inquired about whether Avalon conducts criminal background checks on its caregivers. (Brown Decl. ¶ 4; Baratti Decl. ¶ 4.)  Although Avalon normally would not release criminal background reports without the consent of the subject employee, Brown and Baratti provided background check information on a few Avalon employees to Womack because they thought that Womack was a police officer.  (Id.)  Later, Brown and Baratti discovered that Womack was not Ms. LaDuc's son-in-law or a police officer.  (Brown Decl. ¶ 5; Baratti Decl. ¶ 5.)

On May 4, 2007, Brown went to the San Diego Police Department to file a complaint against Womack for misrepresenting himself as a police officer and threatening Avalon and himself. (Brown Decl. ¶ 6.)  The police told Brown to file his complaint directly with SDTI. (Id.)  Accordingly, Brown went to SDTI's office and met with Burke, Savoy, and Sgt. Dave Adams.  (Id.)  Brown played Womack's voicemail message for them and described the subsequent phone conversation he had with Womack.  (Id.)

On May 11, 2007, Savoy met with Womack to discuss Avalon's complaint.  (Savoy Decl. ¶ 7.)  Womack denied that he represented himself as a police officer or threatened an investigation by his department, although he did admit that he was not actually the son-in-law of Ms. LaDuc.  (Id.)  Upon being confronted with the recording of the voicemail, Womack said that he did not hear the recording clearly and that he did not remember specifically representing himself as a law enforcement officer or police officer. (Def.'s Ex. 18.)  Savoy reported the results of the interview to Burke.  (Savoy Decl. ¶ 7.)

C. Termination and Post-Termination Proceedings

On September 21, 2007, SDTI issued Womack a Notice of Intent to Terminate Employment. (Def.'s Ex. 17.)  The notice referenced the canine-handler incident and also set forth the facts regarding the Avalon incident.  With respect to the Avalon incident, the letter explained:

4

09cv2679 BTM(NLS)

Our conclusion is that you lied to SDTI during the course of our investigation into this incident, by denying that you left a voice mail message for Mr. Brown saying that your [sic] were in law enforcement, and a police officer, and that your department would be investigating this matter. . . . Misrepresenting yourself as a police officer was false, and his [sic] irreparably damaged your credibility.  SDTI can no longer trust you to act as a Code Compliance Inspector, since it is beyond dispute that you will lie and misrepresent yourself.  Since your job for SDTI includes issuing citations and making arrests, yet we know that you will lie when you see fit, you are not qualified for your position, and we have no choice but to terminate your employment.  In your position you may be called upon to testify in court.  Since we now know that you may testify falsely in order to obtain a result that you desire, we cannot allow you to continue in your position.

(Def's Ex. 17, p, 681.)  The notice explained that Womack had violated SDTI rules and procedures including Section 1.4.7 (falsification of statements or records), SOP 600.1(1) (violation of law), SOP 600.1(4) (unbecoming conduct), and SOP 600.1(15) (abuse of position).

On October 10, 2007, SDTI held a <u>Skelly</u>[1] hearing for Womack.  (Greenland Decl. ¶ 8.)  Mary Jane Greenland, Manager of Human Resources for MTS, was the Hearing Officer, and Burke and Savoy were present on behalf of SDTI.  (Def.'s Ex. 11.)  Womack  was represented by counsel at the hearing.  (Greenland Decl. ¶ 8.)  After the hearing, Burke, Greenland, and legal counsel for SDTI agreed that termination was appropriate.  (<u>Id.</u>)  In a termination letter dated October 11, 2007, Greenland explained that SDTI had made the decision to terminate Womack's employment "for the reasons set forth in the Notice of Intention to Terminate Employment, relating to your misrepresenting yourself to a third party as a San Diego Police Officer and lying to SDTI management during the investigation into this incident."  (Def.'s Ex. 11.)

Under the Collective Bargaining Agreement ("CBA") (Def.'s Ex. 12) between SDTI and the Transit Enforcement Officers' Association of San Diego ("the union"), Womack filed a

---

[1]  In <u>Skelly v. State Personnel Board</u>, 15 Cal. 3d 194 (1975), the California Supreme Court discussed what procedural due process requirements the state must comply with before dismissing a permanent employee.  The Court explained that even though due process does not require the state to provide the employee with a full trial-type evidentiary hearing before the disciplinary action is imposed, at minimum, preremoval safeguards "must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline."  <u>Id.</u> at 215.

1   grievance alleging that his termination was not for just cause.  (Def.'s Ex. 13.)  The CBA

2   provides that if a grievance cannot be resolved informally or through a nonbinding mediation,

3   the dispute shall be submitted to final and binding arbitration.  (CBA, Article 8.)

4        The arbitration was held before David B. Hart on December 10, 2008 and January 23,

5   2009. (Betts Decl. ¶ 6.)  Womack was represented by counsel.  (Id.)  Womack testified, and

6   his counsel gave an opening and closing statement, cross-examined the witnesses, and

7   made evidentiary objections.   (Id; Def.'s Ex. 4.)   Womack's counsel argued that the

8   termination was unfair because, among other things, SDTI lacked clear policies regarding

9   discipline, and SDTI improperly considered the canine-handler incident, for which Womack

10  had already been disciplined.  (Def.'s Ex. 6.)

11       In a thirteen-page decision, Arbitrator Hart held that Womack's termination was for

12  just cause.  (Def.'s Ex. 3.)  The arbitrator found that the evidence established that Womack

13  misrepresented himself as a police officer, fraudulently obtained confidential information

14  from Avalon, and was not truthful during SDTI's investigation of the matter.  (Def.'s Ex. 3, p.

15  77.)  The arbitrator also found that because of the seriousness of the incident in relation to

16  the trust placed in him by SDTI, SDTI did not abuse its discretion in imposing the ultimate

17  punishment of termination.  (Def.'s Ex. 3, p. 78.)

18

19                              **II.  STANDARD**

20       Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

21  Procedure if the moving party demonstrates the absence of a genuine issue of material fact

22  and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322

23  (1986).  A fact is material when, under the governing substantive law, it could affect the

24  outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman

25  v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could

26  return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.

27       A party seeking summary judgment always bears the initial burden of establishing the

28  absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party

1  can satisfy this burden in two ways: (1) by presenting evidence that negates an essential
2  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party
3  failed to establish an essential element of the nonmoving party's case on which the
4  nonmoving party bears the burden of proving at trial. Id. at 322-23.  "Disputes over irrelevant
5  or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc.
6  v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

7        Once the moving party establishes the absence of genuine issues of material fact, the
8  burden shifts to the nonmoving party to set forth facts showing that a genuine issue of
9  disputed fact remains.  Celotex, 477 U.S. at 314.  The nonmoving party cannot oppose a
10  properly supported summary judgment motion by "rest[ing] on mere allegations or denials
11  of his pleadings." Anderson, 477 U.S. at 256.  When ruling on a summary judgment motion,
12  the court must view all inferences drawn from the underlying facts in the light most favorable
13  to the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
14  587 (1986).

15

16                                  **III.  DISCUSSION**

17        In his First Amended Complaint ("FAC"), Womack, who is proceeding pro se, names
18  as defendants MTS, SDTI, individual MTS/SDTI employees, the Transit Enforcement
19  Officers Association of San Diego, and Terrance Joseph (identified as President of the
20  union).  Defendants MTS and SDTI move for summary judgment, or in the alternative, partial
21  summary judgment.  It appears that the other defendants have not been served.

22        Construing the FAC liberally,[2] the FAC asserts the following legal claims against MTS
23  and SDTI: (1) violation of SDTI Rules and Instructions; (2) violation of 18 U.S.C. § 241 -
24  Conspiracy Against Rights; (3) violation of 18 U.S.C. § 242 - Deprivation of Rights; (4)
25  violation of Cal. Penal Code § 118 - Perjury; (5) violation of Cal. Penal Code § 422.6 -
26  Interference with Civil Rights; (6) violation of rights under NLRB v. Weingarten, 420 U.S. 251

27  ────────────────────

28        [2]  The body of the FAC does not include numbered causes of action.  Although the
     caption page lists a number of causes of action, it appears that this list does not include all
     of the claims referenced in the body of the complaint.

(1975); (7) wrongful termination/ termination without just cause; (8) hybrid LMRA § 301/fair representation claim; (9) slander; (10) violation of  the First Amendment of the U.S. Constitution - Freedom of Speech; (11) violation of the California Constitution, Article I, Section 2 - Freedom of Speech; (12) violation of the First Amendment of the United States Constitution - Right to Privacy; (13) violation of the California Constitution Article I, Section I, Right to Privacy; (14) violation of 5 U.S.C. § 552a, Privacy Act of 1973; (15) violation of the Fourteenth Amendment of the United States Constitution - Due Process; (16) violation of Cal. Civil Code § 52.1 (interference with exercise or enjoyment of constitutional rights).

As discussed below, the Court finds that there are no triable issues of material fact with respect to Womack's claims.  Therefore, Defendants are entitled to summary judgment.

## A.  SDTI Internal Rules

The FAC alleges that Burke, Savoy, and Greenland violated SDTI Rules and Instructions.  Although it is possible that the violation of SDTI policies and procedures could, in some circumstances, be evidence of the violation of a statute or other legal duty, Womack cannot maintain a free-standing legal claim for the violation of SDTI internal rules and policies.

## B.  Violation of Various Criminal Statutes

Plaintiff brings claims under federal and California criminal statutes, specifically, 18 U.S.C. § 241 (Conspiracy Against Rights), 18 U.S.C. § 242 (Deprivations of Rights), Cal. Penal Code § 118 (Perjury), and Cal. Penal Code § 422.6 (Interference with Exercise of Civil Rights).  None of these criminal provisions provide for civil enforcement or imply that a civil remedy is available.  Therefore, Womack's claims under these statutes fail as a matter of law.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (explaining that 18 U.S.C. §§ 241 and 242 "provide no basis for civil liability" and affirming dismissal of claims); Pollock v. University of Southern California, 122 Cal. App. 4th 1416, 1429 (2003) (explaining that perjury is a criminal wrong and that there is no civil cause of action for "perjury").

C. Violation of *Weingarten* Rights

Womack alleges that Defendants violated his rights under NLRB v. Weingarten, 420 U.S. 251 (1975), by failing to tell him of his union rights during his May 4, 2007 meeting with Burke and Savoy.  (FAC at 6.)  In Weingarten, the Supreme Court interpreted Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, to include the right of an employee to have a union representative present at meetings with an employer when the meeting is investigatory, the employee reasonably expects the meeting will result in disciplinary action, and the employee requests representation.  Id. at 257-58.   Womack's claim that his Weingarten rights were violated allege unfair labor practices that fall within the exclusive jurisdiction of the NLRB.  See Dellbridge v. Acme Food Corp., 2010 WL 148803, at * 3 (D.N.J. Jan. 14, 2010) (holding that plaintiff's claim that his civil rights pursuant to Weingarten were violated was preempted and dismissing claim as a matter of law). Therefore, Defendants are entitled to summary judgment on this claim.

D.  Wrongful Termination/Termination without Just Cause

Womack alleges that he was wrongfully terminated.  Womack claims that Burke and Savoy made false allegations against him and that he was punished for conduct taking place in the privacy of his own home.

Whether Womack's termination was "wrongful," is governed by the CBA, which requires "just cause" for termination.  A suit for breach of a collective bargaining agreement is governed exclusively by federal law under § 301(a) of the LMRA, 29 U.S.C. § 185(a). Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987).  "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement . . .  and any state claim whose outcome depends on analysis of the terms of the agreement."  Id. (citations omitted).  Therefore, any claim by Womack that he was terminated without just cause is preempted by the LMRA.  See O'Sullivan v. Longview Fibre Co., 993 F. Supp. 743 (N.D. Cal. 1997) (holding that employee's breach of contract claim alleging that the employer did not have just cause to

09cv2679 BTM(NLS)

1   discharge him was preempted by the LMRA).

2     To the extent Womack seeks to bring a claim for wrongful termination in violation of

3   public policy – i.e., a <u>Tameny</u>[3] cause of action – such a claim is barred by California's

4   Government Claims Act, Cal. Gov't Code § 810, <u>et seq.</u>, which abolishes common law tort

5   liability for public entities.  <u>See</u> <u>Miklosy v. Regents of the University of California</u>, 44 Cal. 4th

6   876, 900 (2008) (holding that because a <u>Tameny</u> cause of action is a common law, judicially

7   created tort, § 815 bars <u>Tameny</u> actions against public entities).

8

9   E.  <u>Hybrid LMRA § 301 Claim</u>

10    When a union representing an employee during grievance or arbitration proceedings

11  breaches its duty of fair representation, an employee may bring suit against both the

12  employer and the union under LMRA § 301, notwithstanding the outcome or finality of the

13  grievance or arbitration proceeding.  <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 165

14  (1983).  Although the FAC does not cite to § 301, the FAC does allege that the union

15  breached its duty of fair representation and that Womack was wrongfully terminated by

16  SDTI.  Therefore, the Court liberally construes the FAC as asserting a hybrid § 301 claim.

17    To prevail on a hybrid § 301 claim, the employee must prove both that the union

18  breached its duty of fair representation and that the employer breached the collective

19  bargaining agreement.  <u>Bliesner v. Commc'n Workers of America</u>, 464 F.3d 910, 913 (2006).

20  Nothing requires the district court to decide the fair representation question first.  <u>Id.</u> at 914.

21    The Court finds that Womack has failed to raise a triable issue of material fact on his

22  claim that SDTI breached the CBA by terminating him without just cause.  The evidence

23  before the Court establishes that SDTI terminated Womack for misrepresenting himself as

24  a police officer.  The taped voicemail message shows that Womack purposefully led Brown

25  to believe that he was a police officer.  In the recorded message, Womack stated:

26    Hello, my name is Robert Womack.  I'm the son-in-law of Mary LaDuc and we
     need to talk to you about what happened here.  We're finding some more
27    problems here at Mary's house and I was – my understanding is she – you're

28  _____

  [3]  <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal. 3d 167 (1980).

                09cv2679 BTM(NLS)

1

2

3

4

going to come over here today to return some money that was stolen from Mary. I want to tell you I'm also with the law enforcement. I'm a police officer and I'm going to be conducting an investigation with my department. I think the best thing for you to do as soon as you can is get ahold of me or Dodie as soon as possible. I'm going to try and page you and then I will return your phone call to you.

5 (Womack Dep. 126:13-127:9; Brown Decl. ¶ 3.) Womack argues that he never said that he

6 was a "*San Diego* police officer" or that he was going to conduct a "*criminal* investigation."

7 Womack also argues that he was in or with law enforcement because he issued citations

8 and made arrests. The Court is not persuaded by Womack's semantic distinctions. The

9 clear import of the message was that Womack was a law enforcement officer who could

10 conduct a criminal investigation. He was not a "police officer," and he did not have a

11 "department" authorized to investigate thefts.

12 At the arbitration, Womack admitted misrepresenting that he was a member of law

13 enforcement. (Arbitration Transcript (Def.'s Ex. 4) 341:5-25.) He admitted that he was not

14 a member of law enforcement and that he made a mistake: "It was a dumb thing to do, but

15 I was very worried for Mary. I have no excuse. It was – I should have never said those

16 words." (Id. at 342:8-10.)

17 With respect to Womack's telephone conversation with Brown and Baratti, which was

18 not recorded, Womack denies saying that he would be dusting for fingerprints or that he

19 would charge Brown and Baratti criminally. He also denies requesting background check

20 information from Avalon. At the arbitration, Womack testified that he did not request or

21 receive the background information. (Arbitration Transcript 346:16-18.)

22 Although Womack disputes the details regarding what happened after he left the

23 voicemail message, the fact remains that Womack misrepresented himself as a law

24 enforcement officer. As noted in the Notice of Intent to Terminate Employment, Womack's

25 acts of dishonesty raised concerns regarding his ability to perform his job: "Since your job

26 for SDTI includes issuing citations and making arrests, yet we know that you will lie when you

27 see fit, you are not qualified for your position, and we have no choice but to terminate your

28 employment. In your position you may be called upon to testify in court. Since we now know

11

1    that you may testify falsely in order to obtain a result that you desire, we cannot allow you

2    to continue in your position."  (Def's Ex. 17, p, 681.)

3        Based on the undisputed evidence, there was just cause for Womack's termination.

4    The Court agrees with the arbitrator that Womack, as a public employee, owed "unique

5    duties of loyalty, trust, and candor" to his employer and to the public at large, and that his

6    violation of the trust placed in him constituted just cause for termination.  Accordingly, SDTI

7    did not terminate him in violation of the CBA, and his hybrid § 301 claim fails.

8

9    F.  Slander

10       Although not entirely clear, it appears that Womack's claim of slander is based on

11   alleged lies told by Burke, Savoy, and SDTI's attorney.  Womack claims that the Notice of

12   Intent to Terminate Employment signed by Burke was filled with "false allegation."  (FAC at

13   8.)  Womack also claims that Kasper, an attorney for MTS, fabricated claims against

14   Womack during an unemployment benefits hearing.  (FAC at 9-10.)  In addition, Womack

15   alleges that Burke and Savoy committed perjury during the arbitration hearing.  (FAC at 12.)

16       SDTI is immune from liability for the alleged false statements identified above.

17   California Civil Code § 47(b) provides that a privileged publication or broadcast includes one

18   made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official

19   proceeding authorized by law, or (4) in the initiation or course of any other proceeding

20   authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084)

21   of Title 1 of Part 3 of the Code of Civil Procedure."  Any statements made during the

22   arbitration and unemployment benefits hearing are privileged under § 47(b).  See Komarova

23   v. National Credit Acceptance, Inc., 175 Cal. App. 4th 324, 336 (2009) (explaining that the

24   privilege under § 47(b) covers communications made in the course of private contractual

25   arbitrations); Ghebreselassie v. Coleman Security Serv., 829 F.2d 892, 898 (9th Cir. 1987)

26   (holding that  employer's report to the state unemployment office fell within the privilege of

27   § 47(b)).

28       Furthermore, statements made by Burke or Savoy in the context of disciplinary

12

proceedings or investigations preparatory to such proceedings are privileged under Cal. Gov't Code § 821.6.  Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  California courts have interpreted § 821.6 to encompass acts done to institute and prosecute disciplinary proceedings.  See Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1437 (1988) (holding that County and County employees were immune from tort liability for acts done in connection with investigating plaintiff's conduct, instituting dismissal proceedings against the plaintiff, and participating in civil service commission hearings); Paterson v. City of Los Angeles, 174 Cal. App. 4th 1393, 1404-05 (2009) (holding that the City and police sergeant were immune for tort liability for investigation of misconduct complaints and institution and prosecution of disciplinary proceedings).

G.  Freedom of Speech

Womack claims that Defendants violated his right to free speech under the United States Constitution and the California Constitution (Article I, Section 2).  Womack contends that Defendants violated his free speech rights by disciplining him for telephone conversations he had in the privacy of his own home.  Womack's claim fails because his speech was not protected.

Womack was a public employee.  "Public employees . . . often occupy trusted positions in society.  When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." Garcetti v. Ceballos, 547 U.S. 410, 419 (2006).  Thus, a government entity has broader discretion to restrict speech when it acts in its role as an employer.  Id. at 418.

In considering a free speech claim of a public employee, courts carefully balance "the interests of the public employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Huppert v. City of Pittsburg, 574 F.3d 696, 702

(9th Cir. 2009).  "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."  Garcetti, 547 U.S. at 419.  If, on the other hand, the employee's speech does not address a matter of public concern, the speech is not protected by the United States Constitution or California Constitution.  Brownfield v. Yakima, 612 F.3d 1140, 1147 (9th Cir. 2010) (concluding that employee's speech was personal and not protected by the First Amendment); Kaye v. Board of Trustees, 179 Cal. App. 4th 48, 56-59 (2010) (holding that Garcetti applies to free speech claims under the California Constitution by public employees).

The essential question is "whether the speech addressed matters of 'public' as opposed to 'personal' interest."  Anthoine v. North Central Counties Consortium, 605 F.3d 740, 748 (9th Cir. 2010).  Examples of public concern include unlawful conduct by a government employee, the misuse of public funds, or inefficiency in managing and operating government entities.  Id.

Here, the speech concerned a purely personal matter - the care provided by Avalon to a family friend.  Furthermore, the speech implicated the ability of SDTI to operate efficiently and effectively. Therefore, Womack's speech was not protected, and his free speech claims fail.

H.  Invasion of Privacy

Womack claims that Defendants violated his right to privacy under the United States Constitution as well as the California Constitution (Article I, Section I).  Womack claims that his privacy rights were violated because (1) Defendants disciplined him for telephone conversations that took place in the privacy of his home; (2) Burke asked for private records to prove that he entered into a rental agreement; and (3) Defendants told Avalon that Womack was terminated as a result of misrepresenting himself as a police officer.

With respect to Womack's claim under the California Constitution, Defendants are immune from liability under Cal. Gov't Code § 821.6.  As discussed above, § 821.6 provides

1   absolute immunity for acts taken in connection with investigating, instituting, and prosecuting

2   disciplinary proceedings.  This privilege applies even to a constitutionally based privacy

3   cause of action.  Jacob B. v. County of Shasta, 40 Cal. 4th 948, 961 (2007).  Defendants'

4   imposition of discipline for Womack misrepresenting himself as a police officer and the

5   investigation by Burke into whether Womack intentionally lied about living in a house clearly

6   fall within the scope of § 821.6.

7          As for SDTI telling Avalon that Womack was terminated, the conveying of this

8   information was also within the context of Womack's disciplinary proceedings.  SDTI was

9   informing the complainant of the results of the investigation.  See Citizens Capital Corp. v.

10  Spohn, 133 Cal. App. 3d 887, 888 (1982) (holding that defendants were immune under §

11  821.6 because the communication at issue "merely reported the results of official

12  investigations of plaintiffs and the revocation action based on those investigations.").

13  Furthermore, it appears that the conveying of this information occurred in conjunction with

14  SDTI preparing for arbitration.  Brown learned that Womack had been terminated at the time

15  that SDTI asked Brown to be a witness in the arbitration proceeding.  (Brown Decl. ¶ 7.)

16  Therefore, the absolute privilege of § 821.6 applies. [4]

17         Womack's privacy claim under the First Amendment also fails.  Defendants could

18  discipline Womack for telephone conversations he had in the privacy of his own home for

19  the reasons discussed in connection with Womack's freedom of speech claim.  See Dible

20  v. City of Chandler, 515 F.3d 918, 930 n. 8 (9th Cir. 2008) (explaining that although there are

21  some limits to a governmental entity's investigation of its employees, "we have never gone

22  so far as to suggest that those limits are exceeded where, as here, the question is directly

23  related to the employee's connection to an otherwise unprotected activity that affects the

24  functions and mission of the employer.").

25         With respect to Burke's request for a rental agreement or copy of a canceled check,

26  _____

27      [4]  In addition, the qualified privilege set forth in Cal. Civil Code 47(c) applies.  Section
    47(c) extends a conditional privilege to "a communication, without malice, to a person
28  interested therein . . . by one who is also interested."  The outcome of the investigation into
    Avalon's complaint was of mutual interest to both SDTI and Avalon.

1   Womack made the documents relevant to his employment by falsely claiming that he lived

2   in a house during the canine-handler interview.  Burke had a legitimate reason for wanting

3   to confirm that Womack had entered into a rental agreement and was not purposefully lying,

4   and it was Womack's *choice* whether to produce the proof or be disciplined.   The Court

5   does not see how, under these circumstances, Womack's right to privacy was invaded.

6          The Court also finds that Womack did not have a constitutional right of privacy with

7   respect to the fact of his termination.  Courts have rejected similar arguments from public

8   employees.  See Mraz v. County of Lehigh, 862 F. Supp. 1344, 1349-50 (E.D. Pa. 1994)

9   (holding that county defendants' release of the fact of the plaintiff's termination did not violate

10  his right to privacy because the defendants merely reported an official act of the county);

11  Moran v. Southern Regional High School Dist. Bd. of Educ., 2006 WL 436201 (D.N.J. Feb.

12  17, 2006) (rejecting claim of plaintiff that releasing information related to settlement

13  agreement and the circumstances of the plaintiff's resignation to the press violated his

14  constitutional rights to privacy).

15

16  I.  Federal Privacy Act of 1973

17         Womack alleges that Defendants violated his rights under the Federal Privacy Act of

18  1973, 5 U.S.C. § 552a(b), by disclosing facts about his termination to Avalon.  The Privacy

19  Act applies only to "agencies" as defined by 5 U.S.C. § 551(1) and 5 U.S.C. § 552(f)(1), and

20  does not encompass state agencies or bodies.[5] St. Michael's Convalescent Hospital v. State

21  of California, 643 F.2d 1369, 1373 (9th Cir. 1981).  Defendants are state agencies.  MTS

22  was created by Cal. Pub. Util. Code § 120050.  SDTI is a non-profit public benefit

23  membership corporation, whose sole member is MTS.   (Lorenzan Decl. ¶¶ 2-6.)

24  Accordingly, the Privacy Act has no applicability here.

25  _____

26         [5] Section 551(1) defines "agency" as "each authority of the Government of the United
    States, whether or not it is within or subject to review by another agency," with certain
27  enumerated exceptions.  Section 552(f)(1) provides that "agency," as defined in § 551(1),
    includes "any executive department, military department, Government corporation,
28  Government controlled corporation, or other establishment in the executive branch of the
    Government (including the Executive Office of the President), or any independent regulatory
    agency . . . ."

J. <u>Due Process Rights</u>

Womack claims that he was deprived of due process in connection with his termination.  Womack argues in his papers that the result of the proceedings was predetermined because the arbitrator was biased and there was a conspiracy among Burke, Savoy, Greenland, and his attorney to carry out Burke's personal vendetta against him, However, Womack presents no evidence in this regard.  The evidence in the record establishes that Womack was afforded all the process to which he was entitled.

In <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985), the Supreme Court held that where state law provides for a full post-termination hearing, prior to termination, a tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. The opportunity to present reasons may be either in person or in writing. <u>Id.</u>

Under California law, preremoval safeguards must include, at minimum, "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline.  <u>Skelly v. State Personnel Board</u>, 15 Cal. 3d 194, 215 (1975).  A public employee is also entitled to a full evidentiary hearing after the disciplinary action is imposed. <u>Id.</u>

In this case, Womack was given written notice of the charges against, including an explanation of the facts upon which the employer was relying.  Womack was also given a <u>Skelly</u> hearing, during which he had the opportunity to present his side of the story.  Womack takes issue with the fact that the hearing was before Greenland, Burke, and Savoy. However, at this point in time, Womack was not entitled to a hearing before an impartial adjudicator.  He was entitled to an opportunity to present his side of the story to *SDTI*.

After Womack was terminated, he enjoyed a full evidentiary hearing in the form of a final and binding arbitration.  Womack was represented by counsel, who gave an opening and closing statement, put Womack on the stand, cross-examined the witnesses, and made evidentiary objections.

09cv2679 BTM(NLS)

Although Womack is unhappy with the results of his disciplinary proceedings and believes that he was wronged, Womack has not presented any evidence that he was deprived of his due process rights.  Therefore, Defendants are entitled to summary judgment on Womack's due process claim.

K. Cal. Civ. Code § 52.1

Womack brings a claims under Cal. Civ. Code § 52.1, which provides for a civil cause of action "[i]f a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . . ."  Because the Court has granted summary judgment in favor of Defendants on Womack's constitutional claims, there is no predicate constitutional violation, and Womack's § 52.1 claim fails.

## IV. CONCLUSION

For the reasons discussed above, MTS and SDTI's motion for summary judgment is **GRANTED**.  Although Womack has not served the remaining defendants, Womack's claims against them would fail for the same reasons.  Therefore, the Court orders the Clerk to enter judgment against Womack and in favor of all of the defendants.

**IT IS SO ORDERED.**

DATED:  February 28, 2011

Honorable Barry Ted Moskowitz
United States District Judge

09cv2679 BTM(NLS)